**Levi A. Robison and Mark A. English
Deputy Yellowstone County Attorneys
Yellowstone County Courthouse, Room 701
P.O. Box 35025
Billings, Montana 59107-5025
(406) 256-2870
lrobison@co.yellowstone.mt.gov
menglish@co.yellowstone.mt.gov**

**Attorneys for Yellowstone County, et al**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | |
|---|---|
| JOHSUA WILSON, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> YELLOWSTONE COUNTY, *et al*, ) <br> ) <br> Defendant. ) <br> _____ ) | Cause No. CV 17-0091-BLG-SPW-TJC <br><br> **YELLOWSTONE COUNTY'S PRELIMINARY PRETRIAL STATEMENT** |

Pursuant to Rule 16.2(b)(1) of the United States District Court for the District of Montana, Yellowstone County submits the following preliminary pretrial statement:

## Factual Outline of Case

Yellowstone County is a political subdivision of the State of Montana. The Yellowstone County Sheriff operates the Yellowstone County Detention Facility.

On April 8, 2016, the Laurel Police Department arrested Joshua Wilson and placed him in the Detention Facility. West Virginia had issued an arrest warrant for parole violations. West Virginia issued its warrant after Wilson failed to check in with his parole officer, provided a false address to his parole officer, and left the prescribed area of his parole without notifying his parole officer to receive permission. After initial classification screening was done, Wilson was placed in the North 3 area, a medium security housing unit of the facility. On April 11, 2016, Wilson appeared in Yellowstone County Justice Court on the arrest warrant. Because of Wilson's inmate status, Justice Court did not set bail. On April 20, 2016, Wilson was an aggressor in a fight with another inmate in North 3. As a result, Wilson was transferred to a secured classification unit in the Facility, Classification C. On May 9, 2016, Wilson was reclassified and placed in the Classification D area of the Facility. He was placed in cell CD08, located on the second tier of the unit.

On May 14, 2016, the toilet in Wilson's cell overflowed and flooded his cell. At approximately 1:20 PM, Jesse Williams, an inmate in Classification D, informed Brian Degele, a staff member, of the flooding. Degele let Wilson and his cellmate, Brandon Wegner, out to clean their cell. A common practice when cells flood. At approximately 1:29 PM, Degele and Wilson began arguing about whether Wilson flooded his cell. Degele and Diane Shaffer, another staff member, entered the unit and went up the stairs to talk to Wilson. Degele ordered Wilson and Wegner to lock-down and return to their cell. Wegner immediately complied with that order, Wilson

refused. Degele requested assistance over the radio to escort Wilson to a different housing unit. Degele repeatedly ordered Wilson to return to his cell. Wilson refused. Degele then repeatedly ordered Wilson to face the wall so he could handcuff him. Wilson refused several times. After several refusals, Wilson finally complied with Degele's commands to face the wall. As Degele reached for Wilson's wrists to handcuff him, Wilson turned towards Degele and raised his arms in resistance. In response, Degele swiftly grabbed Wilson and pushed him onto the floor on his stomach to maintain control of the prisoner. Officer Shaffer secured Wegner in the cell while Degele restrained Wilson outside the cell on the floor of the second tier.

Responding to Degele's earlier call for assistance, Brent Johnson and Jake Dunker, staff members, arrived in Classification D within seconds of Degele's request for assistance. Johnson ran up the stairs to assist Degele and Dunker followed. Johnson and Dunker assisted in restraining Wilson on the floor of the upper tier by securing his limbs. Degele ordered Wilson to place his hands behind his back. After struggling for several seconds, Wilson complied. Degele placed handcuffs on Wilson's wrists. Degele and Dunker put their arms around Wilson's arms and lifted him off the floor. Degele, Dunker and Johnson escorted Wilson out of Classification D. While waiting for the door to Classification A to open, Wilson attempted several times to turn his head towards Degele, Dunker, and Johnson. Degele used his hand, which was gripping the base of Wilson's head, to push and

turn Wilson's face forward into the glass to keep it from turning towards the officers.

After entering Classification A, Degele, Johnson, and Dunker placed Wilson against the wall outside of a cell until it could be opened and secured. Wilson attempted again to turn his head towards Degele and also made disparaging remarks towards Degele. Degele put his hands on the base of Wilson's head, turning Wilson's head back around a second time to a forward position that also pushed his face into the wall. Johnson then opened and secured the cell while Degele and Dunker held onto Wilson. Degele placed Wilson in a cell in Classification A at 1:34 PM. Degele then noticed blood on Wilson's face. Sgt. Pam Wong, a supervisor at the Detention Facility, summoned the Detention Facility medical contractor, RiverStone Health medical staff, to examine Wilson. Jaylene Pinkerton, a member of the RiverStone Health medical staff, examined Wilson. Pinkerton found that Wilson had a slight cut on the bridge of his nose that needed to be cleaned and that Wilson had recently suffered a nose bleed. Pinkerton found no other injuries. Pinkerton wrote a report of her examination. Wilson complained about the incident to administrative staff at the Facility. There is a video recording of what occurred.

As a result of Wilson's complaint, detectives with the Yellowstone County Sheriff's Office conducted an investigation. The detectives determined that Degele had used reasonable force in compliance with the Facility's use of force policy when he initially restrained Wilson and placed him on the floor. The detectives also

determined that Degele had used unreasonable force not in compliance with the Facility's use of force policy when he redirected Wilson's head during the escort. On July 18, 2016, after the end of the investigation, Sheriff Mike Linder disciplined Degele for a violation of the use of force policy at the Detention Facility based on his redirecting of Wilson's head during the escort from Classification D to Classification A. On June 26, 2017, Degele resigned from the Detention Facility to pursue employment elsewhere.

Wilson's complaint was also evaluated for potential criminal charges against Degele. To avoid any inference of bias, the Yellowstone County Attorney's Office forwarded the investigation to the Montana Attorney General's Office to make a determination whether to file criminal charges against Degele for what occurred on May 14, 2016. On July 21, 2017, the Attorney General's Office decided not to file any criminal charges against Degele.

## Jurisdiction and Venue

The Court has jurisdiction over the claims made in the complaint. In the complaint, Wilson alleges the County negligently injured him, the County violated Wilson's right to dignity and right against cruel and unusual punishment under the Montana Constitution, and the County violated Wilson's right against cruel and unusual punishment under the United States Constitution. Amended Complaint, Doc. No. 6, pp. 3-5. A federal district court has original jurisdiction over all civil actions arising under the Constitution of the United States. 28 U.S.C. § 1331. A

federal district court has original jurisdiction over civil rights actions. 28 U.S.C. § 1343. The Court has original jurisdiction over the claim that the County violated Wilson's right against cruel and unusual punishment under the United States Constitution. It is a constitutional and civil rights claim. A federal district court can exercise supplemental jurisdiction over pendant state claims. 28 U.S.C. § 1367(a). The Court has supplemental jurisdiction over the claims that the County negligently injured Wilson and violated his rights under the Montana State Constitution. They are pendant state claims based on the same event as the constitutional claim.

The Billings Division of the United States District Court for the District of Montana is the proper venue for the case.

## Factual Basis of Defenses

Wilson had been placed in the secured unit of the Detention facility due to his propensity for violence. He continued to exercise his volatility by repeatedly refusing and disobeying direct orders from an officer of the Detention Facility and then became physically resistive with the officer. Wilson's failure to comply with rules and commands of the Facility created the altercation outside his cell. That initial restraint of Wilson complied with the Detention Facility's use of force policy. Wilson has alleged Degele's actions were intentional and intended to injure Wilson. Amended Complaint, Doc. No. 6, p. 5. Wilson has not articulated how these intentional acts on the part of Degele mean the County negligently breached its duty of care towards Wilson.

The County did not violate Wilson's rights under either the Montana or United States Constitutions. The initial restraint of Wilson was justified and the actions of Detention Facility staff during the escort did not constitute cruel and unusual punishment on the part of the County or violate Wilson's right to dignity.

The County did not have an unconstitutional policy, practice, or procedure which caused the injury of Wilson. The County did not inadequately train Degele. Wilson's refusal to obey commands and physical resistance of Degele justified the initial restraint of Wilson. Sheriff Linder disciplined Degele for his behavior during the escort which followed the initial restraint. Degele's behavior during the escort of Wilson was not ratified by Sheriff Linder or any other policymaker of the County. Wilson has not articulated which policy, custom, or practice of the County is constitutionally deficient. Wilson has not articulated how the training of Degele was constitutionally deficient.

Wilson's injuries were the result of justifiable force in Classification D, rather than occurring during the escort of Wilson to Classification A. Wilson's physical injuries from the entire incident, including both the takedown and escort, are limited by what is shown in the photographs taken following the incident and the results of RiverStone Health medical staff examination. The first medical examination, done within a half hour of the incident, showed that Wilson suffered a small, superficial abrasion on the bridge of his nose and a minor nose bleed. The examination specifically noted there was no redness, swelling, bruising, or elevated warmth on

Wilson's back, despite Wilson's claims that his back was injured by Degele. Wilson made no complaints to medical staff that he had injured his mouth. Wilson made no complaints of other injuries as a result of the takedown and escort. Wilson's damages from the incident are minimal at best, nonexistent at worst.

## Legal Theory of Defenses

*Standard of Care*

Montana Code Annotated § 7-32-2121(7) does not create a standard of care owed to inmates in County-operated detention facilities. Section 7-32-2121(7) states that the Sheriff shall "take charge of and keep the detention center and the inmates in the detention center, unless the detention center is operated by a private party under an agreement entered into under 7-32-2201 or by a detention center administrator or by another local government[.]" Nothing in this statute creates a duty of care on the part of the County towards the inmates in the Detention Facility. No statute in the Montana Code creates a standard of care owed to inmates in a county-operated detention facility. Therefore, the appropriate standard of care is the general standard of care as articulated under Montana law. "At the most basic level, we all share the common law duty to exercise the level of care that a reasonable and prudent person would under the same circumstances." *Fisher v. Swift Transp. Co.*, 2008 MT 105, ¶ 16, 342 Mont. 335, 339, 181 P.3d 601, 606. "In analyzing whether a duty exists, we consider whether the imposition of that duty comports with public

policy, and whether the defendant could have foreseen that his conduct could have resulted in an injury to the plaintiff." *Id*. at ¶ 17.

The restraint of Wilson in Classification D did not violate any duty owed to Wilson. Wilson disobeyed and refused direct orders of Detention Facility Staff and became physically resistive with staff. Wilson needed to be restrained and handcuffed to maintain discipline, to allow for his escort to another housing unit, and to prevent injury to staff.

Wilson alleges Degele intended to injure him with his actions. Wilson has not articulated how an intentional act of a County employee constitutes negligence on the part of the County. Negligence and the intentional torts of assault and battery are mutually exclusive. 8 Am. Law of Torts § 26:1.

## *42 U.S.C. § 1983*

Under 42 U.S.C. § 1983, for a governmental entity, such as a county, to be held responsible for the violation of a person's constitutional right by its employee, the employee, under the color of law, must have violated the person's constitutional right and at least one of the following must be true: (1) the employee must have acted pursuant to a policy, custom, or practice of the county; (2) a final policymaker of the county must have committed the act; (3) a final policymaker of the county must have ratified the employee's act; or (4) the county must have failed to provide the employee with adequate training. The elements of an individual capacity claim plus additional elements in the alternative have to be satisfied for a county to be

liable. A government entity cannot be held responsible based on *respondeat superior. Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *Castro v. Cty. of Los Angeles*, 797 F.3d 654, 670-71 (9th Cir.), reh'g en banc granted, 809 F.3d 536 (9th Cir. 2015); Model Civ. Jury Inst. 9th Cir. 9.5 (2014).

The County did not have a policy, practice, or custom which resulted in injuries to Wilson. A final policymaker did not injure Wilson. A final policymaker did not ratify any unconstitutional actions on the part of County employees. Degele was expressly disciplined for his violations of County policy in his treatment of Wilson. The County did not fail to adequately train Degele.

*Punitive Damages*

Punitive damages cannot be assessed against a government entity, such as a county, under either federal or state law. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981); Section 2-9-105 of the Montana Code Annotated. The County is a government entity. Punitive damages cannot be assessed against it under either the federal or state claims made against it by Wilson.

## Computation of Damages

The computation of damages is not applicable to the County.

## Other Related Cases

The County is aware of no other related cases.

## Stipulations and Applicable Law

There are no additional stipulations of fact besides those in the Statement of Stipulated Facts. The applicable laws are Montana's negligence statutes, Section 27-1-701 through 27-1-703 of the Montana Code Annotated, and the cases interpreting the statutes; Section 7-32-2121(7) of the Montana Code Annotated, and the cases interpreting the statute; Section 2-9-105 of the Montana Code Annotated, and the cases interpreting the statute; the cruel and unusual punishment clause of the 8th Amendment of the United States Constitution, and the cases interpreting the clause, such as *Mendiola–Martinez v. Arpaio*, 836 F.3d 1239, (9th Cir. 2016), and 42 U.S.C. § 1983 and the cases interpreting the Section.

## Deadlines for Joinder and Amendment to the Pleadings

The County proposes the Court set the deadline to join parties or amend the pleadings within a month of the preliminary pre-trial conference.

## Controlling Issues of Law Suitable for Pretrial Disposition

The County believes that the following issues may be resolved prior to trial:

Wilson's allegation that the County committed negligence *per se* with the force Degele used against him should be resolved through a motion for summary judgment. There is no statute that articulates the standard of care the County was required to provide Wilson.

Wilson's allegation that the County, with the force Degele used against Wilson, violated his United States Constitutional right under the 8th Amendment

against cruel and unusual punishment should be resolved through a motion for summary judgment. Wilson will not be able to establish Degele used the force pursuant to a County policy, a County policymaker ratified Degele's use of force or the County inadequately trained Degele.

Wilson's allegation that he is entitled to punitive damages from the County should be resolved through either a motion for judgment on the pleadings or a motion for summary judgment. Punitive damages cannot be assessed against the County.

## People with Information Relevant to the Case

Brian Degele – A former staff member of the Yellowstone County Detention Facility. Degele restrained Wilson in the housing unit and escorted him to the classification unit afterwards.

Jake Dunker – An officer at the Detention Facility. Dunker assisted in the escort of Wilson on May 14, 2016.

Bryan Johnson – An officer at the Detention Facility. Johnson assisted in the escort of Wilson on May 14, 2016.

Shane Bancroft – A Detective with the Yellowstone County Sheriff's Office. Det. Bancroft investigated the May 14, 2016 incident involving Wilson.

Roger Bodine - A Lieutenant with the Yellowstone County Sheriff's Office. Lt. Bodine investigated the May 14, 2016 incident involving Wilson.

Mike Linder – Yellowstone County Sheriff. Sheriff Linder made the ultimate decision to discipline Degele for his actions escorting Wilson on May 14, 2016.

Sam Bofto – Commander of the Detention Facility. Commander Bofto is knowledgeable about Detention Facility policies and procedures.

Brandon Wegner – A former inmate at the Detention Facility. Wegner was Wilson's cellmate in Classification Unit D on May 14, 2016.

Jaylene Pinkerton – A former member of the medical staff who worked at the Yellowstone County Detention Facility. Pinkerton examined Wilson after he was escorted to Unit A.

Matthew Westmark – A doctor and former member of the medical staff who worked at the Yellowstone County Detention Facility. Dr. Westmark examined Wilson on May 17, 2016, three days after the May 14 incident.

James Ellis – A deputy with the Yellowstone County Sheriff's Office. Ellis investigated the May 14, 2016 incident involving Wilson.

Frank Fritz – A detective with the Yellowstone County Sheriff's Office. Det. Fritz investigated the May 14, 2016 incident involving Wilson.

Pamela Wong – A supervisor at the Detention Facility. Sgt. Wong was on duty on May 14, 2016. Sgt. Wong interacted with Wilson after his restraint and escort on May 14.

Diane Schaffer - An officer at the Detention Facility. Schaffer was present for the restraint of Wilson on May 14, 2016.

## Insurance Coverage

The County has liability insurance coverage through the Montana Association of Counties – the Montana Association of Counties Joint Power Insurance Authority Property and Liability Self-insurance Pool.

## Settlement Discussions

Wilson and the County have held preliminary settlement discussions. The County believes the possibility exists to resolve the case.

## Suitability of Special Procedures

The County is receptive to any special procedures the Court believes appropriate.

Dated this <u>14th</u> day of August, 2017.

<u>/s/ Levi A. Robison</u><br>
Levi A. Robison<br>
Deputy Yellowstone County Attorney

# Certificate of Service

I certify that on the date below I mailed a copy of the attached Yellowstone County's Preliminary Pretrial Statement to:

  1,2   CM/ECF
_____Hand Delivery
_____Mail
_____Overnight Delivery Service
_____Fax
_____E-mail

1. Clerk, U.S. District Court

2. William D'Alton
   D'ALTON LAW FIRM, P.C.
   222 North 32nd Street, Suite 903
   P.O. Box 702
   Billings, MT 59103-0702
   bill@daltonlawpc.com

   Brian K. Gallik
   James P. Molloy
   GALLIK, BREMER & MOLLOY, P.C.
   777 East Main Street, Ste. 203
   P.O. Box 70
   Bozeman, MT 59771-0070
   brian@galliklawfirm.com
   jim@galliklawfirm.com

   *Attorneys for Joshua Wilson*

   Dated this 14th day of August, 2017.

                             /s/ Levi A. Robison
                             Levi A. Robison
                             Deputy Yellowstone County Attorney