**Levi A. Robison and Mark A. English**
**Deputy Yellowstone County Attorneys**
**Yellowstone County Courthouse, Room 701**
**P.O. Box 35025**
**Billings, Montana 59107-5025**
**(406) 256-2870**
**lrobison@co.yellowstone.mt.gov**
**menglish@co.yellowstone.mt.gov**

*Attorneys for Yellowstone County*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | | |
|---|---|---|
| JOSHUA WILSON, | ) | Cause No. CV 17-0091-BLG-SPW-TJC |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **YELLOWSTONE COUNTY'S** |
| | ) | **STATEMENT OF UNDISPUTED** |
| YELLOWSTONE COUNTY, | ) | **FACTS** |
| | ) | |
| Defendant. | ) | |

Pursuant to Rule 56.1(a) of the of the Local Rules of the United States District Court for the District of Montana, Yellowstone County files its statement of undisputed facts in support of its motion for summary judgment.

### Back Injury

On June 26, 2015, in the Columbus, Montana area, Joshua Wilson jumped from a cliff into shallow water. He injured his back. Levi Robison Affidavit, Exhibit

1, Wilson Deposition Excerpts, p. 13, Lines 21-25, p. 14, Lines 14-25 & Exhibit 3, Dr. Eugene Dolan Consultation. An ambulance transported him to the Billings Clinic in Billings, Montana for further treatment. Robison Affidavit, Exhibit 3. The Clinic stabilized Wilson. *Id*. The Clinic determined he needed more intense treatment than it could provide. *Id*. The Clinic had him transported to Swedish Medical Center in Denver, Colorado for further treatment. *Id*. The Center operated on his back. Robison Affidavit Exhibit 7, Swedish Medical Center Critical Care Progress Note, p. 4. It repaired the fractured vertebra and fused several of his vertebrae. *Id*. It fused his T12 through L4 vertebrae. *Id*. His back injury was in the lumbar area of his spine. *Id*. About three weeks after the surgery, the Center released him and he returned to Billings. Robison Affidavit, Exhibit 1, p. 15, lines 17-20. He went to both the Clinic and St. Vincent Healthcare in Billings, Montana for pain management for his back injury. Robison Affidavit, Exhibit 4, Billings Clinic Emergency Department Report. His back injury has clearly resulted in chronic back pain.

On April 8, 2016, he complained about pain in the thoracic area of his spine to his pain management doctor at St. Vincent. Robison Affidavit, Exhibit 8, Dr. Michael Schabacker Progress Note. The doctor recommended a magnetic resonance imaging study of the thoracic area of his spine, an MRI. *Id*. at p. 4. The MRI was not performed before his incarceration.

## Incarceration

On April 8, 2016, the Laurel Police Department arrested Wilson on a fugitive arrest warrant from the State of West Virginia for a parole violation and placed him in the Yellowstone County Detention Facility. Margaret Gallagher Affidavit, p. 2. Wilson was a convicted felon from West Virginia. *Id*. Wilson was on inmate status as a West Virginia parolee. *Id*. In the Yellowstone County Justice Court, Wilson refused to waive extradition to West Virginia. *Id*. The Justice Court ordered the State either to obtain a Governor's Warrant, or file for extradition in the district court based on Wilson's parolee pre-signed waiver of extradition from West Virginia. *Id*. Wilson complained of back pain upon remand to the Facility and continued to complain of back pain throughout his incarceration. Robison Affidavit, Exhibit 2, Wilson Medical Request Forms. RiverStone Health, the contract medical provider in the Facility, provided Wilson with care for his back pain. *Id*. On May 3, 2016, the district court heard the matter and ordered Wilson extradited to West Virginia based on his pre-signed waiver of extradition. *Id*. Montana continued to hold Wilson on the West Virginia fugitive matter due to Wilson's pending criminal charges in Yellowstone County, Montana. *Id*. Montana held Wilson in the Facility on the extradition charges with no bail. *Id*. On April 20, 2016, Wilson had a fight with Isaiah Eckhart, an inmate, in North 3 in the Facility. Roger Bodine Affidavit, Exhibit 1, Report of Officer Rindahl.

## Incident

On May 14, 2016, in Cell 8, Classification D of the Facility, Joshua Wilson and Brandon Wegner overflowed the toilet in their cell. Brian Degele Affidavit, p 2. Another inmate in Classification D complained to Brian Degele, one of the staff members in Classification that Cell 8 had been flooded. *Id*. Degele ordered Wilson and Wegner to exit the cell, gather the cleaning supplies and clean the cell. *Id*. Wilson and Wegner exited the cell. *Id*.

Wilson and Degele began arguing over how the cell became flooded. Degele Affidavit, Exhibit 1, Classification Unit D Video, at 5:40. Degele ordered Wilson and Wegner to enter the cell. *Id*. Wegner complied with the order. *Id*. Wilson did not comply with the order. *Id*. Degele requested assistance from staff. Degele Affidavit, p. 2. Dianne Shaffer, another staff member, entered Classification D. Degele Affidavit, Exhibit 1, at 6:35. Degele repeatedly ordered Wilson to face the wall and place his hands behind his back to handcuff him. *Id*. Wilson repeatedly failed to comply. *Id*. Eventually, Wilson complied. *Id.* at 6:48. As Degele reached to place the handcuffs on Wilson, Wilson turned his body toward Degele. *Id* at 6:51. Degele believed that Wilson intended to assault him. Degele Affidavit, p. 2. Degele grabbed Wilson and placed him on the floor. Degele Affidavit, Exhibit 1, at 6:55. Degele held Wilson against the floor. *Id*. Shaffer closed the door of the cell Wegner had entered. *Id*. at 7:02

Brent Johnson and Jake Dunker, other staff members, entered Classification D in response to Degele's request for assistance. *Id*. Wilson struggled with Degele, Johnson and Dunker. *Id*. Eventually, Degele handcuffed Wilson. *Id*. at 7:15. Degele, Johnson and Dunker lifted Wilson off the floor. *Id*. at 7:31. Degele, Johnson and Dunker escorted Wilson out of Classification D into the corridor of Classification to place him in Classification A. *Id* at 7:42. While they waited for the door of Classification A to open, Wilson turned his head toward Degele, Johnson and Dunker and yelled threats and profanities directed at Degele, Johnson and Dunker. Degele Affidavit, p 3. Degele told Wilson not to turn his head. *Id*. Wilson continued to turn his head toward Degele, Johnson and Dunker. Degele Affidavit, Exhibit, 2, Classification unit Sally Port Video, 2:30. Degele redirected Wilson's head with his hands from turning toward him, Johnson and Dunker. *Id*. at 2:35. Wilson struck his head against the wall. *Id*. Degele, Johnson and Dunker escorted Wilson into Classification A. Degele Affidavit, Exhibit 3, Classification unit A Video, 3:06. While they waited for the door to the cell in Classification A to open, Wilson again turned his head toward Degele, Johnson and Dunker and yelled threats and profanities directed at Degele, Johnson and Dunker. *Id*. at 3:20. Degele again told Wilson not to turn his head. *Id*. Wilson continued to turn his head toward Degele, Johnson and Dunker. *Id*. Degele redirected Wilson's head with his hands from turning toward him, Johnson and Dunker. *Id*. at 3:35. Wilson struck his head against

the wall. *Id*. Degele, Johnson and Dunker placed Wilson in the cell. *Id*. at 4:21. There are audio video recordings of the incident with Wilson from the various cameras and microphones in Classification.

## Medical Care

Degele noticed Wilson had blood on the bridge of his nose. Degele Affidavit, p. 4. RiverStone was requested to examine Wilson for injuries. Robison Affidavit, Exhibit 9, Jaylene Pinkerton medical Evaluation. RiverStone found Wilson had a minor cut on his nose and recently had a bloody nose. *Id*. RiverStone did not find any other injuries. *Id*. Wilson continued to complain of back pain as he did before the confrontation with Degele. Robison Affidavit, Exhibit 9. & Exhibit 10, Dr. Matthew Westmark Evaluation. RiverStone continued to provide Wilson with care for his back pain. *Id*. RiverStone had an MRI performed on the thoracic portion of Wilson's spine. Robison Affidavit, Exhibit 4, Dr. John Sillery MRI Report. Prior to his incarceration, he complained about pain in the thoracic area and the pain management doctor has recommended an MRI. Robison Affidavit, Exhibit 3. The MRI indicated no acute changes. Robison Affidavit, Exhibit 4, p. 1. It did indicate chronic changes. *Id*. Chronic changes would be expected with his back injury. RiverStone requested a neurological consultation from the Billings Clinic. Robison Affidavit, Exhibit 11, Chris Caruso Medical Evaluation, p 2. The Clinic declined to perform a neurological consultation because it determined there had been no acute

change in Wilson's back since his surgery. Robison Affidavit, Exhibit 6, Billings Clinic Neurosurgery Referral Denial. No medical expert will testify that Wilson's confrontation with Degele caused or aggravated Wilson's back pain.

## Release

Montana dismissed the criminal charges against Wilson. Gallagher Affidavit, p. 2. On July 21, 2016, West Virginia removed Wilson from the Facility. *Id*.

## Investigation and Resignation

On May 14, 2016, Wilson filed a complaint about the use of force by Degele, Johnson and Dunker. Sheriff Mike Linder Affidavit, Exhibit 1. The Yellowstone County Sheriff's Office investigated the complaint. Linder Affidavit, p. 2. The investigation determined that Johnson and Dunker had not used excessive force. Bodine Affidavit, p. 2. It determined that Degele had not used excessive force when he placed Wilson on the floor. *Id*. It determined that Degele had used excessive force when he redirected Wilson's head. *Id*. On July 19, 2016, the County disciplined Degele for the excessive force used to redirect Wilson's head. Linder Affidavit, p. 3. Degele was given a 40 hours unpaid suspension, a ban for one year from bidding for special assignments, and a requirement to attend "use of force" training and any other training determined to be appropriate by training staff and the commander of the Detention Facility. Linder Affidavit, Exhibit 2. No use of force expert will testify that Degele used excessive force when he placed Wilson on the

floor. In July 2017, Degele resigned from his employment with the County as a staff member of the Facility. Linder Affidavit, p. 3.

### Prosecution

In July 2016, the Sheriff's Office presented the investigation to the Yellowstone County Attorney's Office for possible criminal prosecution of Degele. Christopher Morris Affidavit, p. 2. The County Attorney's Office determined it would have a conflict of interest with the case. *Id*. The County Attorney's Office forwarded the investigation to the Montana Attorney General's Office for possible criminal prosecution of Degele. *Id*. On July 21, 2017, the Montana Attorney General's Office declined to prosecute Degele. Degele Affidavit, Exhibit 4.

Dated this <u>1st</u> day of October, 2018.

/s/ Levi A. Robison
Levi A. Robison
Deputy Yellowstone County Attorney

**Certificate of Service**

I certify that on the date below I served a copy of the attached Yellowstone County's Statement of Undisputed Facts on the following people by the following means:

 1, 2  CM/ECF
_____Hand Delivery
__     Mail
_____Overnight Delivery Service
_____Fax
_____E-mail

1. Clerk, U.S. District Court

2. William D'Alton
   D'ALTON LAW FIRM, P.C.
   1643 24th St. West, Suite 314
   Billings, MT 59102
   bill@daltonlawpc.com

   Brian K. Gallik
   James P. Molloy
   GALLIK, BREMER & MOLLOY, P.C.
   777 East Main Street, Ste. 203
   P.O. Box 70
   Bozeman, MT 59771-0070
   brian@galliklawfirm.com
   jim@galliklawfirm.com

   *Attorneys for Joshua Wilson*

Dated this 1st day of October, 2018.

/s/ Levi A. Robison
Levi A. Robison
Deputy Yellowstone County Attorney